Good morning Your Honors and please the court and counsel. My name is Ron Freshman and I represent William Paatalo. The overarching issues here between Paatalo 1 and Paatalo 2 involve inconsistencies from the rebellious facts and documents produced and misrepresentations to the court. That's the overarching issues that we believe exist. Under Title 31 of Montana law, Title 31 violation on the assignments render them void for failure to record the requisite affidavits, which none of the assignments have. The affidavits would include, from the sign org and their signees, certain language essentially that states the effect that there would be no fraud being perpetrated by either party. That's not present here. And this is at the heart of the scamming and the jurisdiction. And a result of this violation, essentially, affiates, we believe, the race judicata because void is void. Secondly, there are inconsistent statements throughout the record. And, for example, Mr. Henderson stated in his affidavit for summary judgment that he confirmed with Mr. Paatalo his true authority in how they were acting when Charles Peterson was acting as the trustee. Now, in the record, you'll find that Mr. Paatalo asked Mr. Henderson three times in separate e-mails, which is part of the record, to confirm the capacity under which Makov Kellogg was acting. However, if you look at the deposition of Mr. Henderson, you'll find that he actually admitted when specifically asked, did you confirm your true capacity? And his response was, in his deposition, that he forgot to confirm with Mr. Paatalo. And that's really what happened. So you have these inconsistent statements between Mr. Henderson's affidavit versus his deposition. That's one example of an inconsistency. So his written affidavit constitutes a soil deposition testimony. And this creates a tribal issue of fact, which we believe supports Mr. Paatalo's position that summary judgment was granted prematurely in this matter. So one of the things that we did discover through the discovery process was an e-mail between Chase and Makov Kellogg, and Peterson, which dated about one year prior to the Paatalo, one year into the Paatalo litigation. And they're actually discussing, between, again, Chase, Makov, Kellogg, and Peterson, who owns the phone? Well, in court, they've already presented that they know exactly who owns the phone and who's the beneficiary. So here's another clear example of an inconsistency. So the next issue is that they state in their statement of facts that Washington Mutual Bank sold Mr. Paatalo's loan in 2007 to Washington Mutual Acceptance Corporation. And from that point on, in 2007, Washington Mutual Bank became the servicer. But in Paatalo 1, J.P. Morgan Chase executes an assignment as a beneficiary of the Deed of Trust, allegedly pursuant to the purchase and assumption agreement that it had with the FDIC, stating that they were the true beneficiary, and they were endorsing a note to the Washington Mutual Trust. So clearly, they couldn't have been the beneficiary and couldn't have executed that assignment if their previous statement was such that it was sold prior to the receivership of the FDIC. Yet again, another inconsistency. Can you explain why Mr. Paatalo didn't reliance on the alleged misrepresentations? He entered into the settlement agreement with – there was a CSA, a confidential settlement agreement, that essentially took him out. He essentially took the Makoff-Peterson and – excuse me, Makoff-Kellogg and Mr. Peterson out of the case. It left Chase essentially in the driver's seat because supposedly they were still – according to the documents, I will get to that. Supposedly, they were still part of the – shall we say they were supposedly the beneficiary and the holder of the note. But – so he relied to his detriment by entering into that settlement agreement. What was his detriment? The detriment was that his house was then later foreclosed by Chase, who came in and said, oh, that settlement doesn't apply to us. Would it have been foreclosed anyway? Pardon? Would it have been foreclosed anyway? Failure to make payments? The issue regarding failure to make payments, yes, it could have been, but it's still an issue of fact. Whether or not – there's no – there's nothing on the record that says he's not paying, but the main thing is that it could have been foreclosed upon, but we still need it to be heard on the matter. I mean, simply to say that he would have been foreclosed, so therefore summary judgment is applicable, that just doesn't make sense. There needs to be evidence, testimony, and all that to buttress that summary judgment or to basically stop – essentially stop the case from moving forward. So another issue, Your Honors, is that Chase executes an assignment to Assault Bank in 2009. Now, I want to point out that in the record it shows Assault Bank ceased to exist, and no longer exists, in October of 2008. So it begs the question, how can they record an assignment to a bank-debt entity? And what was the reliance on that alleged misrepresentation? Well, the assignment essentially gives power for them to be the beneficial amount of holder, gives power to substitute trustee, it gives power to essentially foreclose. But if you have an entity that doesn't exist, giving that authority, it's an impossibility. It's a legal impossibility. It's a void act. Void? Time doesn't confirm a void act. How was Mr. Pitalo hurt by that? His home was foreclosed upon. Is he still living in the home? He is in possession of the home. He actually has another home close by as well. So he can't relate to anything with the home at this point because it's in litigation. There's one other issue about LaSalle Bank I just want to bring up, too, that makes it kind of quirky. It's that in their statement of facts, they also say that LaSalle Bank was granted, LaSalle Bank granted Charles Peterson the authority to substitute him as the trustee. So, like I said, that's also a legal impossibility. LaSalle Bank didn't exist. So there is another issue with regards to Mr. Pitalo's knowledge. Do you want to say what member of LaSalle Bank? Yeah, I guess I do. I didn't quite get through all of it, but I appreciate it. Thank you. Good morning, Your Honor. Senate Peace Court. My name is Ken Miller. I represent the McAuliffe Catalog of Charles Peterson and Jason Henderson. Mr. Pitalo has appealed the district court's ruling with respect to three causes of action, fraud, constructive fraud, and negligent misrepresentation. I noticed that you have co-counsel as a witness. Are you going to share your time? Yes. We plan to take five minutes each. With respect to each of these causes of action, fraud, constructive fraud, and negligent misrepresentation, justifiable reasonable reliance, and these digital elements are justifiable reasonable reliance, and that the party was misled to his or her detriment. This case really does come down to whether or not Mr. Pitalo knew the truth or was actually misled with respect to McAuliffe Catalog's trust capacity. He spends a lot of time arguing that he was ignorant of McAuliffe Catalog's true capacity and he believed they might be some kind of separate local trustee of the Washington Mutual Mortgage Certificates Trust. Those arguments, I think, failed because regardless of what was in the public record or what he might have found out from his investigation, all he needed to do was to review the briefs and district court rulings in this matter and they would have alerted him to the fact that McAuliffe Catalog did not have the capacity or the ability to give him clear title to his house. Early in Apollo 1, McAuliffe Catalog filed a motion to dismiss. It's a quiet title claim where they said McAuliffe Catalog, or Charles Peterson specifically, is just a statutory trustee. McAuliffe Catalog does not have the ability to give you clear title to your house. After the settlement agreement was signed, Chase told him the same thing in their briefs and said McAuliffe Catalog used an erroneous designation. Chase told him that U.S. Bank was the trustee for the Mortgage Certificates Trust and if there was any doubt in his summary judgment order, the district court told Mr. Patalo that, quote, the settlement with McAuliffe Catalog does not entitle Patalo to a judgment quieting title. And it also said very clearly that Chase, as the servicer for U.S. Bank, quote, has authority to enforce the note and date of trust at issue. So Mr. Patalo knew the truth at that point. He knew that McAuliffe Catalog was not the trustee of the Mortgage Certificate Trust. It was a statutory trustee. Under Montana's Small Trafficking and Financing Act, he didn't need to look at the substitution of trustee or possession, possess any particular expertise or knowledge about mortgager or mortgage trusts. He simply read the party's briefs and summary judgment order, which told him he could not rely on that settlement the way that he wanted to rely on it. It's important to remember when he, as soon as- As a matter of fact, you say this was after the settlement? Yes. So his argument is that he thought the settlement was with the trustee of the trust? Does the later information avoid reliance? It avoids reliance because when you talk about the reliance and the detriment, he says in his briefs, this is the only detrimental reliance he's identified. He says, after I had that settlement agreement, I took no action to appeal the district court's summary judgment rule and I didn't take any action to appeal my house because I believed under the settlement agreement that I had clear ties to my house because the mortgage trust had released its claims. The district court in Chase explained to him very clearly that the settlement agreement did not accomplish that. He went immediately after the settlement to the court and filed a motion for partial summary judgment. He was quieted to his house based on the settlement agreement. And the district court communicated very clearly to him, no, that is not the effect of the settlement agreement. There was an erroneous designation as to Madoff-Kellogg's trust capacity. So at that point, if he failed to appeal, Alice's decision falls on him and it was not the result of the agreement. Was the decision or collateral to Oslo's risk to the kid? I'm sorry, I don't understand your question. Well, with respect to the status of things at that point, these issues have now been resolved, and his failure to appeal forecloses review of those issues, Mike. I don't agree with that. Yes, the district court clearly resolved those issues, and his failure to appeal falls on him and is not the result of a fraudulent representation or reliance on that. I've exceeded my time, and I'll increase the time for my co-counsel. Good morning. May I please record counsel? My name is Doug James. I represent the appellees, JPMorgan Chase and U.S. Bank. First, I'd like to address the appellant's argument that everything is void that they don't like, including the judgments in Attala 1, because there were not affidavits recorded along with the assignments. This is a novel and creative argument. It was not made in the trial court. In fact, it was not made in their opening brief. It was made in their reply brief. It is also an absolute misrepresentation of Montana law. The statutes to which they cite are Montana Code Annotated 31-210 and 211. These statutes do require an affidavit to be recorded with an assignment, but these statutes relate to an assignment for the benefit of creditors. This has nothing to do with Montana Small Tract Finance Act assignments for real estate deeds of trust. An assignment for the benefit of creditors is akin to the old common law alternative to bankruptcy, which is simply totally inapplicable in this case. Everything that has been argued in this case was argued or could have been argued in Attala 1. In that case, as was pointed out, they had a release of all claims, and Reyes-Tutakata issued a claim preclusion to apply. In Attala 1, Mr. Attala moved for partial summary judgment on the settlement agreement and the release of all claims. In Attala 1, he argued, and I'll quote, any claims to title by the remaining defendants, Chase and B.I.C., had been extinguished by virtue of plaintiff's settlement with Magog and Kellogg Law Firm. That was the issue that was litigated in Attala 1. The district court ruled against him. He didn't appeal. Now he's filed Attala 2. We're re-litigating the same issues. The doctrine of Reyes-Tutakata bars him from re-arguing or re-litigating those same issues. We ask you to affirm the district court got this right. Thank you. Thank you very much. I'd just like to address the Erroneous Aspect 1 thing about that. Who were the drafters of this confidential settlement agreement? We all know the old adage, any ambiguity which is held against the drafter, they knew that 20 years' experience to draft up settlement agreements, they drafted it as the trustee of the Remington Trust. Anything that was erroneous certainly could have been clarified in the settlement agreement, such that Mr. Kattelow, a non-attorney, is a private investigator with certain experience, but still, he wasn't an attorney. He didn't know about that. So he chose not to correct that in Attala 1. Now keep in mind, in Attala 1, they never looked at the confidential settlement agreement. It was only in Attala 2 that it arose. With respect to the Reyes-Tutakata issue, we have void judgments as I've discussed, but we also have the harm in Attala 1. The harm is that he got foreclosed upon, and the fraud became apparent after we were doing depositions. Now they correct depositions and discovery. They moved for summary judgment very quickly and got it before we even finished our discovery. I was here over your time, so you can talk with one sentence. Sure, okay. The only other thing I'd like to point out is that Cynthia Riley, the endorsement, was she basically stopped working in 2006. They have essentially a document, or they essentially, it would have been impossible for a 2007 assignment, a vintage note to have her endorsement because it's impossible for her to sign something when she doesn't even work at the company anymore. Thank you, counsel. Thanks very much. We have both sides of your arguments. The case is submitted, and we are adjourned for the day.
judges: O'scannlain, Fisher, Friedland